UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON ALMEIDA,<br><br>    Petitioner,<br><br>v.<br><br>THOMAS DICKHAUT as Superintendent of<br>the North Central Correctional Institution<br>at Gardner,<br><br>    Respondent. | Civil Action No. 09-11432-DJC |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                                    March 17, 2015

**I.    Introduction**

Petitioner Jason Almeida ("Almeida") has filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C § 2254 claiming that: (1) trial testimony was prejudicially influenced by a spectator; (2) he was denied his right to cross-examine a witness; (3) ineffective assistance of counsel; (4) the prosecutor improperly vouched for witnesses' credibility; and (5) the testimony of two witnesses was coerced. D. 22; D. 22-1. Respondent, the Superintendant at MCI Gardner, opposes the Petition. D. 76. For the reasons set forth below, the Court DENIES Almeida's Petition.

**II.    Background**

    **A.  Factual Summary**

This factual background is drawn from the Supreme Judicial Court's decision affirming Almeida's conviction. Yeboah-Sefah v. Ficco, 556 F.3d 53, 62 (1st Cir. 2009). Almeida was convicted by a Bristol Superior Court jury of first-degree murder for the

1

shooting death of Joseph Canto in a parking lot behind a New Bedford lounge in the early morning hours of October 14, 2000. Commonwealth v. Almeida, 452 Mass. 601, 602-03 (2008). There was no physical evidence connecting Almeida to the crime, but three witnesses testified to his involvement. Id. at 603. The first witness was David Grace ("Grace") who testified that he saw Almeida and his codefendant, Russell Andrews ("Andrews"), at the lounge the evening of October 13, 2000 and approached them in the parking lot after they left the lounge. Id. at 604. As he neared the group that included Almeida and Andrews, he heard gunshots, saw the victim run past him, saw Almeida with a gun in his hand, and saw the victim fall between a truck and a car. Id.

The second witness, John Todman ("Todman"), also saw Almeida at the lounge. Id. Just before the lounge closed, Todman, Andrews and others left through the back door. Id. at 604-05. In the parking lot, Todman saw the victim walk from the corner of the street toward Almeida. Id. at 605. Almeida backed away as the victim continued to approach. Id. Todman saw Almeida "reach for his waist and pull out a gun" and "a gun 'in the air' with 'fire' 'coming . . . up in the air' from the defendant's hand." Id. (quoting Todman's trial testimony). Todman then took cover behind a car. Id.

The third key witness, Olivia Pires Lara ("Lara"), was also at the lounge on the evening of October 13, 2000. Id. She observed an argument among Almeida, Andrews and the victim on the dance floor and a bouncer telling them to leave. Id. The victim left through the back door, followed by a group that presumably included Almeida and the argument continued in the parking lot. Id. A short time later, Lara left through the front door. Id. She heard a gunshot and ran down the street to the back of the lounge where she saw Almeida and the victim arguing and Andrews standing beside the victim. Id. She

also saw Almeida retrieve something from the car. Id. When Andrews pointed a gun at the victim's head, Almeida said, "Give me that," grabbed the gun and shot the victim in the head. Id. at 605-06.

**B. Procedural History**

Almeida was convicted of murder in the first degree and of unlawful possession of a firearm. Id. at 602 & n.1. Almeida timely appealed to the Supreme Judicial Court, asserting largely the same claims now before the Court. Id. at 602-03. The Supreme Judicial Court affirmed Almeida's convictions and an order denying his motion for new trial. Id. at 603.

On August 27, 2009, Almeida filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), which he later withdrew voluntarily. D. 1, 17. He renewed his petition on February 3, 2010. D. 22. Another session of this Court denied as moot Almeida's motion to toll time. See docket entry Mar. 18, 2010. On October 10, 2013, Almeida filed a motion to amend the Petition, D. 28, followed on January 31, 2014 by a renewed petition, D. 31. The same session of this Court allowed Almeida's motion to amend as unopposed and stated that the operative petition was the amended petition filed on January 31, 2014. D. 32, 41. The respondent's motion for reconsideration of the order granting Almeida's motion to amend the Petition was allowed. D. 42, 44. The case was then reassigned to this Court. D. 47. Concurrently, Almeida appealed the order allowing the respondent's motion for reconsideration, which the First Circuit dismissed for lack of jurisdiction. D. 53, 67.

Because Almeida withdrew his initial petition and was ultimately precluded from proceeding with his petition of January 31, 2014, this Court ruled on February 11, 2015,

D. 82, that the operative petition before the Court is the Petition he filed on February 3, 2010, D. 22. The Court heard the parties on the Petition on March 6, 2015 and took the matter under advisement. D. 88.

## III. Discussion

### A. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court reviews Almeida's application for a writ of habeas corpus to determine if the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Clarke v. Spencer, 582 F.3d 135, 140 (1st Cir. 2009). This standard is "'difficult to meet' because the purpose of [the statute] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." Greene v. Fisher, 132 S. Ct. 38, 43 (2011) (internal citations omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent where "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or where "the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002);

4

McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir. 2002). Because the statute "uses the word 'unreasonable,' as opposed to 'erroneous' or 'incorrect,' a state court's application of federal law must go beyond simple error to justify issuance of the writ of habeas corpus." Morgan v. Dickhaut, 677 F.3d 39, 46 (1st Cir. 2012) (citing Williams, 529 U.S. at 411).

### B. Almeida is not entitled to habeas relief for the denial of the right to cross-examine a witness

Almeida's first claim is that the "trial jury was subjected to testimony prejudicially influenced by [a] spectator during direct examination and cross-examination." D. 22 at 6. Almeida argues that he was denied the right to confront the spectator. D. 73 at 5. The trial judge interrupted the cross-examination of Todman, excused the jury, and noted that he observed the spectator "signaling to the witness." Almeida, 452 Mass. at 606. The judge stated for the record that he placed the spectator in the custody of the court officers when he observed the spectator "after [defense counsel] asked the witness questions, to be nodding in the affirmance as to questions that were to be answered with a yes, shaking her head no as to questions that were to be answered by a no prior to the witness answering." Id. At the request of Almeida's counsel, the trial judge barred the spectator from the remainder of the trial. Id.

In essence, Almeida argues that the spectator gave testimony through Todman that was not subject to cross-examination. D. 73 at 4, 6-7. The Supreme Judicial Court concluded that Almeida was not denied his right to confront the spectator, who was available to call as a witness, because the judge did not deny any relief requested by Almeida's counsel and because Almeida made no showing that the spectator, had she been questioned, would have provided testimony helpful to Almeida's case. Almeida, 452 Mass. at 606-07.

5

The Sixth Amendment secures a criminal defendant's right to be confronted with the witnesses against him, a right primarily secured by the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 315 (1974); Crawford v. Washington, 541 U.S. 36, 49 (2004). But Almeida cites no Supreme Court precedent that obligated the trial judge to require, *sua sponte*, cross-examination of a spectator, even under the circumstances in his case. Almeida relies primarily on Davis, which held that a defendant accused of burglary was denied his constitutional right of confrontation where he was precluded from questioning a key prosecution witness regarding the fact that the witness was on probation for committing burglary as a juvenile. Id. at 309, 317-18. Here, unlike in Davis, Almeida was not prevented from eliciting evidence of bias by the key witnesses against him. The Supreme Judicial Court's treatment of the spectator issue was not contrary to, or an unreasonable application of Davis (or any other Supreme Court precedent), and thus Almeida's petition on this issue is denied.

### C. Almeida's claim that Grace and Todman were forced to testify falsely under threat of baseless perjury charges does not entitle him to habeas relief

The second basis for Almeida's petition is that two witnesses were forced by the police to testify falsely regarding their identification of Almeida. D. 22 at 8. According to Almeida, Todman and Grace did not identify Almeida as the perpetrator during their initial interviews with the police. D. 73 at 16. At subsequent interviews, however, held hours after the first, each witness made audio-taped statements identifying Almeida. Id. At the probable cause hearing and at trial, Todman and Grace denied their audio-taped statements. Id. Almeida asserts that at least one witness also testified that he was being forced to testify under the threat of perjury charges. Id. at 17.

The Supreme Judicial Court addressed Almeida's argument that the witnesses did not adopt their audio-taped statements at the probable cause hearing, concluding that "[t]he statements were prior consistent statements made before a motive to fabricate existed, and were properly admitted for the limited purpose of rebutting a claim of recent fabrication." Almeida, 452 Mass. at 616 (citing Commonwealth v. Wright, 444 Mass. 576, 582-83 (2005)). The Supreme Judicial Court also noted that "[t]he judge provided correct limiting instructions." Id.

The crux of Almeida's argument appears to be that the trial court improperly admitted hearsay evidence. D. 73 at 11, 15-17. He, however, does not raise any particular constitutional claim, and the rules of admissibility of evidence are governed by state law, beyond the province of this Court with respect to habeas relief. See Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) (stating that "we have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (noting that "[e]rrors based on violations of state law are not within the reach of federal habeas petitions unless there is a federal constitutional claim raised").

Almeida makes the additional charge that "the prosecutor intimidated his own witnesses . . . by charging Grace and Todman with perjury that he knew he could not prove. The prosecutor further obtained this false charge as leverage to coerce his own witness to incriminate the defendant at his trial." D. 73 at 15. The Supreme Judicial Court concluded that Almeida was "factually incorrect" because both witnesses "had testified under oath at a probable cause hearing," implying that a perjury charge was not

7

meritless. Almeida, 452 Mass. at 616. Almeida does not point this Court to any facts that undermine the findings of the Supreme Judicial Court. See Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002) (stating that "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary").

### D. Almeida fails to make a claim that he was denied his right of cross-examination

Almeida next argues that he was denied effective cross-examination of Lara.[1] D. 22 at 9, D. 73 at 19-23. The Supreme Judicial Court noted that Lara responded to both prosecution and defense questions "numerous" times with the answers "I don't remember" or "I don't recall." Almeida, 452 Mass. at 607. Almeida characterizes these responses as a refusal to answer. D. 73 at 21. The Supreme Judicial Court concluded, however, that Lara did not refuse to be cross-examined, observing that Lara was asked almost one thousand questions on cross-examination and that "[i]t was entirely reasonable for the witness to have no memory of some of the information sought by many of the questions."

---

[1] Almeida's petition frames this issue as one of ineffective assistance of counsel. D. 22 at 9. His explanation, however, states that he "was not allowed effective cross-examination of [a] key identification witness about [the] veracity of [a] statement made to police pertaining to [her] identification of petitioner." Id. He further states that "[t]he witness refused to answer, only to offer the explanation of 'I don't know' or 'I can't remember.'" Id. Almeida's brief in support of his petition also addresses the issue under the confrontation clause. D. 73 at 19-21. Given that the crux of Almeida's briefing addresses the issue directly, rather than as an ineffective assistance claim, the Court analyzes the issue here with respect to the confrontation clause. Almeida, 452 Mass. at 607. Even considering this issue, however, as a matter of ineffective assistance of counsel, the Court concludes that trial counsel's performance in regard to this matter was not deficient. Counsel cross-examined Lara extensively and made use of her lapses in memory to discredit her testimony. Id. at 613. Moreover, the trial court noted, in denying Almeida's motion for new trial, that he would have denied any motion to strike her testimony. Id. at 614. Against this backdrop, the Court does not conclude that even the first prong of the Strickland standard, discussed *infra*, is met as to this issue.

8

Almeida, 452 Mass. at 607. Moreover, the Supreme Judicial Court stated that Lara's "memory lapses were additional fodder for impeaching her credibility, and defense counsel so used them in his closing argument." Id. at 608.

The Supreme Judicial Court's conclusion that Lara's testimony "did not sink to the levels that have been held to deny the right to cross-examination" was reasonable. Id. at 607. The Supreme Court in Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) articulated the test for an analogous situation -- whether a limitation on cross-examination is constitutionally permissible. "The first question to be asked under the Van Arsdall test is whether the limitation prejudiced the examination of that particular witness. In other words, absent the limitation, would the jury have received a significantly different impression of the witness's credibility? The second element of the Van Arsdall test is whether the error was harmless beyond a reasonable doubt; if so, reversal is not warranted." DiBenedetto v. Hall, 272 F.3d 1, 10 (1st Cir. 2001) (internal citation omitted). Here, Almeida is not challenging any limit placed on cross-examination by the trial judge. He instead asserts that Lara's memory lapses deprived him of the right to cross-examine her. The Supreme Judicial Court, however, credited the trial judge's statement that defense counsel cross-examined Lara "vigorously and at great length," and itself concluded that Almeida exercised his right to cross-examine. Almeida, 452 Mass. at 607. Almeida has not made a showing that, even if Lara had answered every question put to her with perfect recollection, the jury would have received a different impression of her credibility or her testimony. Indeed, Almeida's counsel used Lara's memory lapses to impeach her credibility and the jury chose to credit her testimony nonetheless. See Companonio v. O'Brien, 672 F.3d 101, 111 (1st Cir. 2012) (stating that "we cannot decide

9

in the petitioner's favor unless we supplant the Supreme Judicial Court's reasoning by adopting his view of arguably conflicting evidence. But where the record evidence can be interpreted to support a different version, the case here, we must reject such a request") (internal quotation marks omitted); Teti v. Bender, 507 F.3d 50, 59 (1st Cir. 2007) (explaining that "the state trial judge's implicit credibility determinations, adopted by the [appellate court], are exactly the type of factual determinations to which we defer, at least short of any indication of serious error"). The Supreme Judicial Court's conclusion that Almeida was not deprived of his right of cross-examination was not contrary to, or an unreasonable application of, clearly established federal law.

### E. Almeida was not deprived of effective assistance of counsel

Almeida asserts that his counsel was ineffective for failing to procure Lara's plea agreement with respect to federal drug charges against her. D. 22 at 9. Almeida argues that his counsel also erred by failing to move for a mistrial, to strike testimony or otherwise request a remedy after the spectator allegedly influenced witness Todman.[2] Id. at 11, D. 73 at 37. The Supreme Judicial Court evaluated both claims using the standard required by Mass. Gen. L. c. 278, § 33E of whether there was a substantial likelihood of a miscarriage of justice. Almeida, 452 Mass. at 611. As the Supreme Judicial Court noted, that standard is more favorable to Almeida than the constitutional standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id., citing Commonwealth v. Wright, 411 Mass. 678, 682 (1992); see Teti, 507 F.3d at 56 (stating that "[f]or habeas purposes, where

---

[2]Almeida argues in his brief that trial counsel was ineffective in myriad and expansive ways not referenced in his petition. D. 73 at 29-31. None of these claims is set forth in Almeida's petition, D. 22, and are, therefore, deemed waived. See United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997).

state law is explicitly more favorable to defendants than the federal standard, we will presume the federal law adjudication to be subsumed within the state law adjudication").

As to the spectator who coached the witness, the Supreme Judicial Court held that "trial counsel did not fail in his obligations and that the alleged omissions by counsel were not likely to have affected the conclusion of the jury." Almeida, 452 Mass. at 612. The Supreme Judicial Court reasoned that the bulk of Todman's most important testimony was not subject to the "yes" or "no" leading provided by the spectator, and he was subject to a thorough cross-examination. Id. In addition, the Supreme Judicial Court noted with approval the trial judge's conclusion that he would have denied a motion to strike Todman's testimony. Id. As for Lara's testimony and her plea agreement, the Supreme Judicial Court noted that "the jury were . . . aware that Lara was testifying while awaiting a sentencing in a Federal drug prosecution to which she had pled guilty. She was cross-examined thoroughly about this agreement . . . . It is unlikely, therefore, that additional details regarding that agreement would have affected the outcome." Id. at 615.

According to Strickland, a defendant must first show "that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687. A defendant must next "show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id. "To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' To establish prejudice, 'he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (quoting Strickland, 466 U.S. at 688, 694). "Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Almeida has failed to show that his counsel was ineffective with respect to the spectator's coaching of Todman while he was on the witness stand. Almeida does not proffer any reasonable argument that counsel's conduct fell below an objective standard of reasonableness or that the outcome of the trial would have been altered but for counsel's choices. Although defense counsel did not move for mistrial or to strike Todman's testimony, which would have been unavailing, as later indicated by the trial court, counsel successfully implored the judge to bar the spectator from the courtroom for the remainder of the trial. Defense counsel also vigorously cross-examined Todman.

Similarly, Almeida has not made a reasonable argument that counsel's conduct with respect to Lara's plea agreement satisfies the Strickland test. As the Supreme Judicial Court noted, the jury was made aware that Lara had pleaded guilty to drug charges in an unrelated case and was awaiting sentencing. Almeida fails to explain what additional details counsel should have procured and how those details would have altered the result of his trial. Absent that showing, this Court concludes that Almeida's petition must be denied.

### F. Almeida's claim that the prosecutor impermissibly vouched for witness testimony does not entitle him to habeas relief

Almeida's final claim is that the prosecutor vouched for Todman and Grace's testimony because each was facing perjury charges that would be dropped in return for truthful testimony, which Almeida construes as testimony favorable to the prosecution. D. 22-1 at 3; D. 73 at 26-27.

"'[A] prosecutor may not place the prestige of the government behind a witness by making personal assurances about the witness'[s] credibility;" nor may the prosecutor indicate that facts outside the jury's cognizance support the testimony of the government's witnesses." United States v. Bey, 188 F.3d 1, 7 (1st Cir. 1999) (quoting United States v. Neal, 36 F.3d 1190, 1207 (1st Cir. 1994)). As the Supreme Judicial Court concluded, however, it is not improper for the prosecutor to elicit testimony that the witness has entered into a plea agreement. Almeida, 452 Mass. at 608; Neal, 36 F.3d at 1208 (quoting United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1994)). Eliciting such testimony, if appropriately handled, about a plea agreement does not amount to improper prosecutorial vouching. Almeida, 452 Mass. at 608. This argument does not support a basis for relief where the trial judge specifically instructed the jury that the Commonwealth was prohibited from vouching for a witness's truthfulness and where Almeida's own counsel cross-examined the witnesses regarding the conflict between their statements to police and at the probable cause hearing. Almeida, 452 Mass. at 608-09 & n.8.

None of the grounds--either each ground considered alone or in conjunction with the other grounds--raised by Almeida in the Petition warrants the habeas relief that he seeks.

13

**IV.     Conclusion**

For the foregoing reasons, the Court DENIES Almeida's petition for a writ of habeas corpus, D. 22.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge